EXHIBIT

A

## BEFORE THE NEBRASKA DEPARTMENT OF EDUCATION

| | | |
|---|---|---|
| TERESA AND PATRICK EBERHART | ) | CASE No. 24-01 SE |
| parents of ████████, | ) | |
| ██ ██ ██ | ) | |
| ████████, | ) | |
| | ) | |
| PETITIONER, | ) | |
| | ) | |
| vs. | ) | |
| | ) | FINDINGS OF FACT AND |
| PAPILLION LA VISTA | ) | CONCLUSIONS OF LAW |
| COMMUNITY SCHOOLS | ) | |
| 420 S. Washington St., | ) | |
| Papillion, NE 68046, | ) | |
| | ) | |
| RESPONDENT. | ) | |

THIS MATTER came before the hearing officer on the parties' joint stipulations of fact before Mona (Molly) Burton, the duly qualified and appointed fair Hearing Officer. Petitioners Teresa and Patrick Eberhart were represented by their attorney Amy Bonn. Respondent Papillion La Vista Community Schools ("PLCS") was represented by its attorney Jordan Johnson. On March 21, 2025, the parties submitted their joint stipulations of fact, joint stipulated statement of the legal issues, and joint stipulated exhibits, and the case was taken under advisement.

The Hearing Officer's jurisdiction is based upon  20 U.S.C. § 1415 of the Individuals with Disabilities Education Act ("IDEA") and Title 92, Chapter 55 of the Nebraska Administrative Code.

Petitioners Teresa and Patrick Eberhart filed a special education due process Petition on April 26, 2024, alleging PLCS denied their daughter ████████ ("Student") a free appropriate public education ("FAPE") by determining Student's eligibility for special education services would end on May 9, 2024, due to her age. Specifically, Petitioners asserted Student,

1

who would not turn 21 until ████████, 2024, was eligible to receive special education services for the entirety of the then-current 2023-2024 school year (through May 21, 2024), as well as for an additional year of services for the 2024-2025 school year. Following the Petitioners' April 26, 2024 filing, PLCS ceased Student's special education services on May 9, 2024—which was the district's last day for seniors and other graduating students—rather than allowing her to attend through May 21, 2024, which was the district's last day of school for all other students. (Stip. Fact 14-17.)

Because PLCS also asserted Student had no "stay put" right to attend school through the 2024-2025 school year (Exhibit 4), Petitioners filed a Motion for Enforcement of Stay-Put Placement on May 24, 2024, seeking an order Student, during the pendency of this administrative proceeding, is entitled to attend her current Individualized Education Program ("IEP") educational placement, the Young Adult Transition Program ("YATP"), within PLCS. This Hearing Officer found *A.D. v. State Department of Education,* 727 F.3d 911 (9th Cir. 2013) persuasive and determined the issue of whether the student has aged out of special education services is at the heart of this case. Accordingly, on June 17, 2024, this Hearing Officer issued a signed order granting Petitioners' motion and ordering Student is entitled to attend the YATP as her "stay-put" placement during the pendency of the proceeding. Student has continued attending the YATP throughout the 2024-2025 school year.

On March 21, 2025, the parties jointly stipulated to the authenticity and admissibility of the following exhibits. The parties also jointly moved for these exhibits to be admitted into evidence. The Hearing Officer hereby grants the joint motion, and the following exhibits are admitted into evidence for this case:

| Exhibit Number | Exhibit Description | Starts on Page |
|---|---|---|
| 1 | E.E. April 1, 2024 IEP | 1 |
| 2 | April 8, 2024 Prior Written Notice (PWN) | 44 |
| 3 | E.E. April 25, 2024 IEP | 46 |
| 4 | May 10, 2024 Prior Written Notice (PWN) | 88 |
| 5 | Voisin – Eberhart Emails, March 2024 | 90 |
| 6 | PLCS Board Policy 6101 | 93 |
| 7 | NDE's Statement on SpEd (SOS): Start and End of School Years | 94 |
| 8 | PLCS Year-End SpEd Active Count, 2021-2022 | 96 |
| 9 | PLCS Year-End SpEd Active Count, 2022-2023 | 97 |
| 10 | PLCS Year-End SpEd Active Count, 2023-2024 | 98 |
| 11 | "Definitions," Civil Rights Data Collection Submission, 2021-2022 | 99 |
| 12 | PLCS Student Staff Calendar, 2023-2024 | 113 |
| 13 | PLCS Certified Staff Calendar, 2023-2024 | 115 |
| 14 | PLCS 12-Month Staff Calendar, 2023-2024 | 116 |
| 15 | PLCS Student Staff Calendar, 2024-2025 | 117 |
| 16 | PLCS Certified Staff Calendar, 2024-2025 | 118 |
| 17 | PLCS Administrative Calendar, 2024-2025 | 119 |
| 18 | NE Adult Education / NDE Applicant Information Session, 2022 | 120 |
| 19 | NE Narrative Report – National Reporting System, 2022 | 162 |
| 20 | NE Assessment Policy, 2022 | 172 |
| 21 | ADVISER Data Elements, 2023-2024 | 213 |
| 22 | ADVISER Data Elements, 2024-2025 | 336 |

| 23 | EMAPS IDEA User Guide | 454 |
| 24 | Table FFR 2 NE 2021 | 491 |
| 25 | Table FFR 1 NE 2022 | 495 |
| 26 | FFR Due Dates | 499 |
| 27 | Table FFR 2 NE 2022 | 500 |
| 28 | Table FFR 1 NE 2023 Initial | 504 |

## FINDINGS OF FACT

This Hearing Officer adopts the parties' joint stipulations of fact, which are as follows:

1.  Teresa and Patrick Eberhart (Petitioners) are the parents of ▆▆▆▆▆ (Student).

2.  Petitioners are the court appointed guardians of Student.

3.  Student resides with Petitioners at ▆▆▆▆ ▆ ▆▆▆▆▆▆▆▆.

4.  Papillion La Vista Community Schools is the district of residence for Student and serves as the Local Education Agency for Student.

5.  Papillion La Vista Community Schools is a public school district in Nebraska that provides elementary and secondary instruction to students.

6.  Papillion La Vista Community Schools is a public agency that provides special education and related services to students with disabilities.

7.  Student has Angelman Syndrome, a genetic disorder that primarily affects the nervous system.

8.  Student has an Individualized Education Program as a student verified as a student with an Other Health Impairment.

4

9.    Student attends the Young Adult Transition Program within PLCS, which is physically based at Liberty Middle School located at 10820 Wittmus Drive, Papillion, Nebraska 68046.

10.    Student was born on ▮▮▮▮▮ 2003.

11.    On April 1, 2024, Student's IEP team convened at Liberty Middle School for her annual IEP meeting. At the meeting, Petitioners requested that PLCS develop an IEP for Student for the upcoming 2024-2025 school year. Petitioners requested that Student be deemed eligible for IEP services from PLCS through her 22nd birthday on ▮▮▮▮▮, 2025.

12.    On ▮▮▮▮▮, 2024, Student turned 21 years old.

13.    During the IEP meeting on April 1, 2024, the district stated that it relied on the scheduled first day of school for the 2024-2025 school year—August 13, 2024—to determine that Student would turn 21 before the school year commenced, and that she would therefore not be eligible for special education services for the 2024-2025 school year.

14.    On April 8, 2024, Respondent issued to Petitioners a Prior Written Notice stating that "Student is ineligible for services at the conclusion of the 2023-2024 school year, and that her final date of services will remain May 9, 2024."

15.    Respondent had set May 9, 2024 as the date for the last date of services for graduating YATP students, which was also the last date of school set by the district for high school seniors for the 2023-2024 school year.

16.    PLCS set May 21, 2024 as the last day of school for the district overall for the 2023-2024 school year.

17.    Respondent ceased services to Student on May 9, 2024.

18.    The first day of instruction for Respondent's students during the 2024-2025 school year was August 13, 2024.

19.    On August 13, 2024, Respondent resumed services to Student following the Hearing Officer's order in this matter dated June 10, 2024, which designated the YATP as the stay-put placement for student.

20.    Respondent has served Student in the stay-put placement throughout the 2024-25 school year.

21.    Pursuant to the requirements of Neb. Rev. Stat. § 79-11,133, the Nebraska Department of Education operates an adult education program that provides for the education of any person who is sixteen years of age or older, who is not enrolled in high school and is not required to be enrolled in school, who lacks sufficient mastery of basic educational skills to enable him or her to function effectively in society or does not have a certificate of graduation from a high school or equivalent educational experience, and whose lack of mastery of basic skills result in an inability to speak, read, write, or understand the English language constituting a substantial impairment of his or her ability and evidences a need for programs to help eliminate such inability and raise his or her level of education making it less likely that he or she will become dependent on others.

22.    The Nebraska Adult Education Program is a program within the Nebraska Department of Education. (*See* Exhibit 20.)

23.     The period of July 1, 2023, through September 30, 2024, is the most recent period for
        which the Nebraska Department of Education has available an Initial Federal
        Financial Report for the Nebraska Adult Education Program. (*See* Exhibit 28)

24.     Federal governmental funding ("Federal share of expenditures") for the Nebraska
        Adult Education Program for the period of July 1, 2021, through September 30, 2022,
        was $2,898,170.00. (Exhibit 24, Table-FFR-2-NE-2021, "e. Federal share of
        expenditures" and "g. Total Federal Share.")

25.     State and local governmental funding ("j. Recipient share of expenditures") for the
        Nebraska Adult Education Program for the period of July 1, 2021, through September
        30, 2022, was $966,061.09. (Exhibit 24, Table-FFR-2-NE-2021, "j. Recipient share of
        expenditures.")

26.     Federal governmental funding (g. Total Federal share of expenditures) for the
        Nebraska Adult Education Program for the period of July 1, 2022, through September
        30, 2023, was $2,954,825.00. (Exhibit 27, Table-FFR-1-NE-2022, "e. Federal share
        of expenditures" and "g. Total Federal Share.")

27.     State and local governmental funding ("j. Recipient share of expenditures") for the
        Nebraska Adult Education Program for the period of July 1, 2022, through September
        30, 2023, was $988,752.93. (Exhibit 27, Table-FFR-1-NE-2022, "j. Recipient share of
        expenditures.")

28.     The initial report of federal governmental funding (g. Total Federal share of
        expenditures) for the Nebraska Adult Education Program for the period of July 1,
        2023, through September 30, 2024, was $1,998,542.29. (Exhibit 28, Table-FFR-1-
        NE-2023 Initial, "e. Federal share of expenditures" and "g. Total Federal Share.")

29.    The initial report of state and local governmental funding ("j. Recipient share of expenditures") for the Nebraska Adult Education Program for the period of July 1, 2023, through September 30, 2024, was $723,197.18. (Exhibit 28, Table-FFR-1-NE-2023 Initial, "j. Recipient share of expenditures.")

30.    Total program income earned for the Nebraska Adult Education Program for the period of July 1, 2021, through September 30, 2022, was $0. (Table-FFR-2-NE-2021, "l. Total program income earned," Responsive Document to Subpoena Request #1.) (Exhibit 24).

31.    Total program income earned for the Nebraska Adult Education Program for the period of July 1, 2022, through September 30, 2023, was $0. (Table-FFR-1-NE-2022, "l. Total program income earned," Responsive Document to Subpoena Request #1.) (Exhibit 27)

32.    The initial report of total program income earned for the Nebraska Adult Education Program for the period of July 1, 2023, through September 30, 2024, was $0. (Exhibit 28, Table-FFR-1-NE-2023, "l. Total program income earned," Responsive Document to Subpoena Request #1.)

33.    The Nebraska Adult Education program does not authorize local program providers (grant recipients) to generate program income by charging participants (students) any fees, including registration fees or tuition fees.  Additionally, local program providers (grant recipients) may not charge for books or other educational related materials to participate in Adult Education programs and classes.

       (Exhibit 18, p. 33.)

34.     The Nebraska Adult Education program staff engaged in state leadership activities

during the 2022-2023 program year that included the following:

> [T]he State Office effectively determined performance improvement needs of each local provider and evaluated the performance outcomes and the training needs of all local staff, both administrative and instructional. The annual training plan was based on the outcomes of these evaluations but was also adaptive to ensure needs of adult learners and staff were continuously met. The State Office provided relevant professional development activities and ongoing technical assistance on a regular basis, with prescheduled monthly meetings and as needed. Nebraska Adult Education partnered with content experts to deliver trainings to providers that focused on best practices using the most rigorous research available in reading, writing, speaking, mathematics, English language acquisition, digital literacy and distance education.
>
> Nebraska Adult Education relied on multiple methods to deliver high-quality professional development activities across the state, including the utilization of a small cohort model with a train-the-trainer approach, online training programs, face-to-face trainings, web-based meetings and conference calls and by attending our annual adult education conference and national conferences. Recordings of past trainings were made available on the State's training website, allowing for equable access by local program staff and instructors at any time.
>
> Nebraska Adult Education hosted a myriad of professional development opportunities and technical assistance trainings....

(Exhibit 19, p. 2.)

35.     Exhibit 11 demonstrates the federal Office for Civil Rights within the U.S.

Department of Education defines *school year* as "School year includes

summer" for the purpose of required annual reporting for the Civil Rights

Data Collection. (Exhibit 11, p. 11.)

36.    As a state education agency, NDE is required to report and maintain data to meet

federal reporting requirements pursuant to the IDEA. The U.S. Department of

Education has set forth a "required reference period of July 1 to June 30 to report

exiting data for IDEA" for state education agencies.

(Exhibit 23, p. 15.)

37.    "ADVISER Data Elements 2024-2025" Version 9.0 from the Nebraska Department

of Education provides:

> The ADVISER Data Elements document is intended to provide guidance to Nebraska Public and Special Purpose Schools on the submission of data from their local Student Information System (SIS) to the ADVISER Operational Data Store (ODS) in order to fulfill ADVISER Dashboard, CRDC [Civil Rights Data Collection], and Nebraska Department of Education (NDE) State Reporting requirements.

> Because each SIS is unique, this document is not intended to inform districts as to the proper use of their local SIS for these purposes. Rather, the intent is to guide districts in selecting from the choices in their local SIS to submit accurate data for ADVISER Dashboard and the NDE State Reporting purposes.

(Exhibit 22, p. 10.)


"Adviser Data Elements" for "8.7 Special Education Program" contains the following

definition for the term *Begin Date*: "Definition: The effective date for the Special

Education record in the current school year. Like other programs, this date should always

be between July 1st and June 30th of the school year."

(Exhibit 22, p. 72.)

38.    "ADVISER Data Elements 2023-2024" Version 8.0 from the Nebraska Department

of Education provides that

> The ADVISER Data Elements document is intended to provide guidance to
> Nebraska Public and Special Purpose Schools on the submission of data from
> their local Student Information System (SIS) to the ADVISER Operational Data
> Store (ODS) in order to fulfill ADVISER Dashboard, CRDC [Civil Rights Data
> Collection], and Nebraska Department of Education (NDE) State Reporting
> requirements.
>
> Because each SIS is unique, this document is not intended to inform districts as
> to the proper use of their local SIS for these purposes. Rather, the intent is to
> guide districts in  selecting from the choices in their local SIS to submit accurate
> data for ADVISER Dashboard and the NDE State Reporting purposes.

(Exhibit 21, p. 10.)


"Adviser Data Elements" for "8.7 Special Education Program" contains the following

definition for the term *Begin Date*: "Definition: The effective date for the Special

Education record in the current school year. Like other programs, this date should always

be between July 1st and June 30th of the school year."

(Exhibit 21, p. 72.)

39.    The Papillion La Vista Community Schools Student Calendar for the 2023-2024

school year (Exhibit 12) documents the following dates:

a.    "First Day of School" is documented as August 10, 2023 with "NO SCHOOL" that

day for 8th and 10th - 12th grades. The first day of school for students in 8th and 10th -

12th grades is August 11, 2023.

b.    "Last Day of School" is documented as May 21, 2024.

c.    "Seniors last day" is documented as May 9, 2024.

d.    Graduation is documented as May 12, 2024.

   e.   "Possible Makeup" days are documented as May 22, 23, and 24, 2024.

   f.   The calendar also documents that middle and high schools "=175 days," and that the "Calendar reflects 187 days of the teacher 190 day contract."

40.   The Papillion La Vista Community Schools Student Calendar for the 2024-2025 school year (Exhibit 13) documents the following dates:

   a.   August 2, 2024 is designated for "New Special Education Teachers."

   b.   August 5-7, 2024 is designated for "New Teachers."

   c.   "All Staff Kickoff" is documented as August 8, 2024.

   d.   "First Day of School" is documented as August 13, 2024 with "NO SCHOOL" that day for 8th and 10th - 12th grades. The first day of school for students in 8th and 10th - 12th grades is August 14, 2024.

   e.   The calendar also documents that middle and high schools "=175 days," and that the "Calendar reflects 187 days of the teacher 190 day contract."

## LEGAL ISSUES

On March 21, 2025, the parties jointly stipulated to the following legal issues in this case:

1.   Is the Student eligible for special education services until her 22nd birthday pursuant to 20 U.S.C. § 1412(a)(1)(B) because of the Adult Education Program established pursuant to Neb. Rev. Stat. § 79-11,133?

2.   Is the Student eligible for services during the 2024-25 school year pursuant to 92 NAC § 51-004.01 which purports to terminate the entitlement to a FAPE under the IDEA for students with disabilities in Nebraska at the end of "the school year in which the child reaches age twenty-one"?

## ANALYSIS AND CONCLUSIONS OF LAW

**I.      Student is eligible for special education services until her 22nd birthday pursuant to 20 U.S.C. § 1412(a)(1)(B).**

The IDEA requires "[a] free appropriate public education is available to all children with disabilities residing in the state between the ages of 3 and 21, inclusive, including children with disabilities who have been suspended or expelled from school." 20 U.S.C. § 1412(a)(1)(A). The word *inclusive* carries specific meaning.  Federal courts have consistently held the phrase "between the ages of 3 and 21, inclusive" refers to the period between a student's third birthday and the day before the student turns 22, so that students with disabilities are entitled to receive services during the year that they are 21 years of age. *St. Johnsbury Academy v. D.H*., 240 F.3d 163, 168 (2d Cir. 2001). *See also K.L. v. R.I. Bd. of Educ*., 907 F.3d 639 (1st Cir. 2018) (because the state provided a public education to nondisabled individuals between the ages of 21 and 22, students with disabilities were entitled to special education services until they turned 22); *L.A. Sch. Dist. v. Garcia*, 669 F.3d 956, 959 (9th Cir. 2012) (under the IDEA, all students "who are [otherwise] eligible for special education services are entitled to continue receiving those services until they turn twenty-two").

**A. The exception to the IDEA's requirement that states provide FAPE to disabled students until they turn 22 does not apply in Nebraska because Nebraska provides public education to nondisabled adults via the Nebraska Adult Education Program.**

The IDEA provides an exception to the requirement students with disabilities be educated throughout the entire year they are 21 years of age until they turn 22. If a state does not provide public education to *nondisabled* individuals between the ages of 18 through 21, inclusive, (*i.e.*, until the nondisabled individuals turn 22), then the state and the public school districts within

that state are not required to provide a free appropriate public education to students *with disabilities* in that same age range:

> (B) Limitation
> The obligation to make a free appropriate public education available to all children with disabilities does not apply with respect to children—
> (i)    aged 3 through 5 and 18 through 21 in a state to the extent that its application to those children would be inconsistent with state law or practice, or the order of any court, respecting the provision of public education to children in those age ranges….

20 U.S.C. § 1412(a)(1)(B)(i)

The Nebraska Department of Education's Regulations and Standards for Special Education Programs, 92 Neb. Admin. Code § 51-004.01 ("Rule 51"), purports to terminate the entitlement to a FAPE under the IDEA for students with disabilities in Nebraska at the end of "the school year in which the child reaches age twenty-one." However, this Nebraska regulation unlawfully conflicts with 20 U.S.C. § 1412(a)(1)(B)(i) because it imposes an age limitation on the public special education of students with disabilities who are under the age of 22, but Nebraska—both in state law and in state practice—does not impose that age limitation on non-disabled students.

Because the Nebraska Department of Education ("NDE") provides public education to students aged 18 through 21 via its adult education program, it is obligated under the IDEA to make a FAPE available to students with disabilities in that age range as well, and thus to provide special education and services to eligible students with disabilities until their 22nd birthdays. *See* 20 U.S.C. § 1412(a)(1)(B).

There is *no statute or regulation* in Nebraska that imposes an age limitation of 21 years on the entitlement to public education generally. To the contrary, NDE is statutorily required to make available a program of public education to Nebraskans who are sixteen years of age or older as

part of the Adult Education Program, which requires NDE to provide, supervise, and assist with the program. The applicable statute, enacted in 1990, reads as follows:

> The Adult Education Program is established in the State Department of Education. The program shall assist in the development and strengthening of community education programs in school districts of the state and provide for the education of any person who is sixteen years of age or older, who is not enrolled in high school and is not required to be enrolled in school, who lacks sufficient mastery of basic educational skills to enable him or her to function effectively in society or does not have a certificate of graduation from a high school or equivalent educational experience, and whose lack of mastery of basic skills results in an inability to speak, read, write, or understand the English language constituting a substantial impairment of his or her ability and evidences a need for programs to help eliminate such inability and raise his or her level of education making it less likely that he or she will become dependent on others. The program shall be under the direction of a state supervisor appointed by the department.

Neb. Rev. Stat. § 79-11,133 (Reissue 2014).

Further, there is *no Nebraska practice* with respect to public education generally that is inconsistent with providing special education students a FAPE until the age of 22. To the contrary, it is the practice of the state to provide a program of public education to Nebraskans until the age of 22 (and beyond), via the Adult Education Program.

### 1. NDE provides public education to nondisabled individuals until age 22 (and beyond).

Federal courts have found a state's adult education program constitutes "public education" pursuant to 20 U.S.C. § 1412(a)(1)(B) if the program is funded by state or local governments, the state oversees the adult educational services provided, and the educational services are free to the adult students. The First Circuit held students with disabilities were entitled to continued receipt of special education services until they turn 22 because the state provided public education to nondisabled individuals up to (and beyond) age 22. In that case,

15

Rhode Island's education program was very similar to Nebraska's Adult Education Program. The First Circuit specifically disagreed with a "narrow interpretation of 'public education,'" highlighting "the two core attributes of 'public education' that are undisputed: (1) a significant level of state or local governmental funding, and (2) the public administration or oversight of the educational services." *K.L. v. R.I. Bd. of Educ.*, 907 F.3d 639, 642 (1st Cir. 2018)

The First Circuit also held because *in practice*, the state of Rhode Island provided free public education to nondisabled individuals aged 22 (and older), then the state must also provide a FAPE to disabled students until they turned 22—even though Rhode Island *state law* said otherwise:

> [T]he IDEA's requirement that states provide FAPE to students until their twenty-second birthday is not inconsistent with Rhode Island's law or practice "respecting the provision of public education," and, therefore, the limitation set forth in § 1412(a)(1)(B)(i) does not apply. Hence, to the extent that Rhode Island General Laws § 16-24-1(f) and Regulations Governing the Education of Children with Disabilities § 300.101(a) are noncompliant with the mandate set forth in § 1412(a)(1)(A), *they are invalid*.

*K.L.*, 907 F.3d at 652-53 (emphasis added).

Likewise, in the instant case, the state of Nebraska provides public education to nondisabled adults and must therefore also provide FAPE to disabled students until they turn 22. NDE actively funds, directs, and supervises the Adult Education Program. The Nebraska Adult Education Program is a program within the Nebraska Department of Education. (Stip. Fact 22; *see* Exhibit 20.)

### a. NDE funds and disburses federal funds for the Adult Education Program.

The funding of the Adult Education Program is established by statute:

> The Commissioner of Education may disburse, from funds appropriated for the State Department of Education, sufficient

> money for supervision, instruction, and other necessary expenses in
> conducting the Adult Education Program.

Neb. Rev. Stat. § 79-11,135 (Reissue 2014).

NDE does in fact provide funding to the Adult Education Program in practice. For the period between July 1, 2023, and September 30, 2024, state and local government funding for the Adult Education Program totaled  $723,197.18. (Stip. Fact 29, Exhibit 28.) During the two preceding periods, state and local government funding for the program was $966,061.09 and $988,752.93, respectively. (Stip. Fact 25 and 27; Exhibits 24 and 27.) These state and local funding amounts are significant. By comparison, for example, the total federal share of expenditures for the period of July 1, 2023, through September 30, 2024, was $1,998,542.29. (Stip. Fact 28, Exhibit 28.)

### b. NDE supervises local agencies' provision of services under the Adult Education Program.

Pursuant to the Adult Education Program statute, local educational agencies may also fund and host the Adult Education Program for Nebraskans age 16 and older:

> School boards and boards of education may expend money
> for conducting schools and classes in school buildings,
> industrial establishments, places of employment, and such
> other places as may be expedient for the purpose of giving
> instruction to persons described in section 79-11,133. Such
> courses of instruction or study may include basic educational
> skills, English, history, civics, and other subjects tending to
> promote good citizenship and to increase vocational
> efficiency.

Neb. Rev. Stat. § 79-11,134 (Reissue 2014).

The Nebraska Adult Education program staffers within NDE have engaged in state leadership activities in recent years that included the following:

17

[T]he State Office effectively determined performance improvement needs of each local provider and evaluated the performance outcomes and the training needs of all local staff, both administrative and instructional. The annual training plan was based on the outcomes of these evaluations but was also adaptive to ensure needs of adult learners and staff were continuously met. The State Office provided relevant professional development activities and ongoing technical assistance on a regular basis, with prescheduled monthly meetings and as needed. Nebraska Adult Education partnered with content experts to deliver trainings to providers that focused on best practices using the most rigorous research available in reading, writing, speaking, mathematics, English language acquisition, digital literacy and distance education.

Nebraska Adult Education relied on multiple methods to deliver high-quality professional development activities across the state, including the utilization of a small cohort model with a train-the-trainer approach, online training programs, face-to-face trainings, web-based meetings and conference calls and by attending our annual adult education conference and national conferences. Recordings of past trainings were made available on the State's training website, allowing for equable access by local program staff and instructors at any time.

Nebraska Adult Education hosted a myriad of professional development opportunities and technical assistance trainings….

(Stip. Fact 34; Exhibit 19, p. 2.)

### c. The Nebraska Adult Education Program is free to students.

The Nebraska Adult Education program does not authorize local program providers ("grant recipients") to generate program income by charging participants ("students") any fees, including registration fees or tuition fees. Additionally, local program providers ("grant recipients") may not charge for books or other educational related materials to participate in Adult Education programs and classes. (Stip. Fact 33; Exhibit 18, p. 33.) Accordingly, total program income for the Nebraska Adult Education Program between July 1, 2021, and September 30, 2024, was $0. (Stip. Fact 30 – 32; Exhibits 30 – 32.)

**2. Courts have consistently recognized states that provide public education to nondisabled adults must likewise provide FAPE to disabled students until they turn 22, pursuant to 20 U.S.C. § 1412(a)(1)(B).**

Similar to the First Circuit's ruling in *K.L.*, the Second Circuit affirmed the ruling from the United States District Court for the District of Connecticut which found as follows with respect to that state's adult education program, which had likewise been enforced via a state statute:

> [T]he [state] Board violated the rights of plaintiff class members under IDEA, 20 U.S.C. §§ 1412(a)(1), 1407, and 1412(11), by denying a free appropriate public education ("FAPE") to disabled students between the ages of 21 and 22 while providing a free public education to nondisabled students in the same age range, and (B) permanently enjoined the Board and its successors, employees, and agents, etc., from terminating, on the basis of age, FAPEs for plaintiff class members who have not received a regular high school diploma before they reach the age of 22.

*A.R. v. Conn. State Bd. of Educ.*, 5 F.4th 155, 157 (2d Cir. 2021).

Likewise, the Ninth Circuit affirmed a lower court ruling that Hawaii had violated the IDEA by ending special education services to students with disabilities at the end of the school year when they turned 20, while providing adult education programming to nondisabled students in the same age group. *E.R.K. v. State Dep't. of Educ.*, 728 F.3d 982, 984-85 (9th Cir. 2013).

Other states[1] have now course-corrected by enacting statutes on this issue over the past decade. In 2023, for example, the Pennsylvania Department of Education was sued in a federal class action lawsuit[2] brought on similar grounds in response to a similar IDEA age cutoff.

---

[1] These states include New Hampshire (RSA 186-C:2) and Maine (Title 20-A, §7201) which have changed the eligibility of for special education services to disabled students' 22nd birthdays.

[2] *A.P. v. Pennsylvania Dept. of Educ.*, 2:23-cv-02644 (E.D. Penn. July 11, 2023).

This Hearing Officer finds, like the laws of those other states, Nebraska's state regulation purporting to terminate the entitlement to a FAPE under the IDEA for students with disabilities before they turn 22 violates the federal IDEA.

The timing of Nebraska's creation of the Adult Education Program is important to this case.  In 1990, the Adult Education Program requiring NDE to make available public education to Nebraskans 16 years of age or older was established by statute as Neb. Rev. Stat. § 79-1415. Two years prior, in 1988, the Supreme Court of Nebraska ruled Nebraska's limitation of special education services to students with disabilities until the year they turned 21—rather than until their 22nd birthday—was not inconsistent with state law. *Monahan v. Sch. Dist. No. 1*, 229 Neb. 139, 425 N.W.2d 624 (1988). However, this Hearing Officer finds the 1990 enactment of the Nebraska law establishing the Adult Education Program—and NDE's adherence to it— supersedes the 1988 *Monahan* decision. Since 1990, Nebraska law has not been compliant with the IDEA's requirement students with disabilities be in receipt of special education services until they turn 22.

The Eighth Circuit has explained federal law preempts earlier conflicting interpretations of the IDEA as applied by the states. *See Sch. Bd. of Indep. Sch. Dist. No. 11 v. Renollett*, 440 F.3d 1007, 1010 n.3 (8th Cir. 2006) (noting that "it was error" for the state administrative hearing officer to place the burden of proof on the school district in keeping with state and Eighth Circuit law at the time, in light of the U.S. Supreme Court's later ruling on that issue).

Since Nebraska's establishment and implementation of its Adult Education Program in 1990, Nebraska must provide FAPE to students with disabilities through that same age range, until their 22nd birthdays, pursuant to 20 U.S.C. § 1412(a)(1)(B)(i).

**B.  The IDEA preempts state laws that conflict with it.**

For many special education transition students in Nebraska—including Student—there is a conflict between the federal law regarding when students age out of special education eligibility (when they turn 22) and the Nebraska regulation in Rule 51 (stating that eligibility ends at the end of "the school year in which the child reaches age twenty-one"). Conflict preemption therefore applies. According to the Eighth Circuit, conflict preemption occurs when compliance with both federal and state laws is impossible, and when a state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Keller v. City of Fremont*, 719 F.3d 931, 940 (8th Cir. 2013) (citation omitted).

The Third Circuit has explained the application of conflict preemption in an IDEA case:

Under the doctrine of federal preemption, which is rooted in the Supremacy Clause of the Constitution of the United States, state laws are invalid if they "'interfere with, or are contrary to, federal law.'" *Fellner v. Tri-Union Seafoods, L.L.C.*, 539 F.3d 237, 242 (3d Cir. 2008) (quoting *Hillsborough Cnty. v. Automated Med. Labs.*, 471 U.S. 707, 712, 105 S. Ct. 2371, 85 L. Ed. 2d 714 (1985)). "There are three types of preemption: express preemption and two types of implied preemption, field preemption and conflict preemption." *Treasurer of N.J. v. U.S. Dep't of Treasury*, 684 F.3d 382, 406 (3d Cir. 2012). Conflict preemption is found where "compliance with both federal and state regulations is a physical impossibility," *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43, 83 S. Ct. 1210, 10 L. Ed. 2d 248 (1963),  or where state law erects an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Farina v. Nokia Inc.*, 625 F.3d 97, 115 (3d Cir. 2010) (internal quotation marks omitted).

Here, conflict preemption applies. It is impossible for Mastery to comply with the requirements of § 11.24 of the Pennsylvania School Code, while simultaneously complying with the stay-put provision; Mastery cannot remove R.B. from its attendance roll and implement her IEP at the same time. Under the preemption doctrine, the stay-put provision prevails. *See Doe ex rel. Gonzalez v. Maher*, 793 F.2d 1470, 1485-86 (9th Cir. 1986) (holding that the stay-put provision of the Education for All Handicapped Children's Act ("EHA") preempted state law allowing the

21

indefinite suspension or expulsion of a disabled student during administrative proceedings); *E.Z.-L. ex rel. R.L. v. NYC Dep't of Educ.*, 763 F. Supp. 2d 584, 599 (S.D.N.Y. 2011) (holding that the stay-put provision preempted state law regarding unjust enrichment).

*R.B. v. Mastery Charter Sch*., 532 Fed. Appx. 136, 141-42 (3d Cir. 2013).

Courts in IDEA cases have long held states can provide *more* rights and services to disabled students and their parents than the federal IDEA does, but states cannot provide *less* to students than what is required by the IDEA: "While the federal Act establishes a basic floor of education, it may provide a lesser standard of educational services and procedural protection than state law mandates." *Town of Burlington v. Dep't of Educ.*, 736 F.2d 773, 788-89 (1st Cir. 1984), *aff'd sub nom, Sch. Comm. Of Town of Burlington, Mass. v. Dep't of Educ. of Mass*, 471 U.S. 359 (1985). Therefore, where a state's standards differ from those of the IDEA, "a district court's inquiry must include a determination whether the state substantive standard exceeds the protection and services required by the federal Act. If it does, the state standard will operate to determine what an appropriate education requires for a particular child in a given state." *Id.* at 789.

In the instant case, the Nebraska regulation, 92 Neb. Admin. Code § 51-004.01, which states entitlement to a FAPE for students with disabilities terminates at the end of "the school year in which the child reaches age twenty-one" provides a lesser substantive standard than does the IDEA, which requires a FAPE be made available to children with disabilities "between the ages of 3 and 21, *inclusive*." 20 U.S.C. § 1412(a)(1)(A) (emphasis added). Nebraska's lesser substantive standard is not permitted pursuant to the law of federal preemption. According to the Nebraska regulation, a student in PLCS who turned 21 on March 15, 2025, for example, would be entitled to special education services only until May 8, 2025. (*See* Exhibit 15, 2024-2025 Student Staff Calendar, "Seniors Last Day".) However, pursuant to 20 U.S.C. § 1412(a)(1)(A),

that same student would be entitled to receive special education services until the very last day

she is still 21, which would be March 14, 2026. *See St. Johnsbury Academy v. D.H.*, 240 F.3d

163, 168 (2d Cir. 2001); *K.L. v. R.I. Bd. of Educ.*, 907 F.3d 639 (1st Cir. 2018) (finding that

because the state provided a public education to nondisabled individuals between the ages of 21

and 22, students with disabilities were entitled to special education services until they turned 22).

There is an established history of decisions finding state laws preempted by the federal

IDEA:

> Numerous courts have found that the IDEA preempts state law when the state
> standard conflicts with the federal. *See e.g., Hacienda La Puente Unified School
> Dist. v. Honig*, 976 F.2d 487, 496 (9th Cir. 1992) (failure to comply with state
> statute requiring notice of claim of attorney's fees may not bar claim for attorney's
> fees under IDEA); *Antkowiak v. Ambach*, 838 F.2d 635, 641 (2nd Cir. 1988) (state
> statute permitting state review of unappealed decision of hearing officer violates
> finality provision of Education for All Handicapped Children Act's
> (EHA)); *Gonzales ex rel. Doe v. Maher*, 793 F.2d 1470, 1485-6 (9th Cir. 1986)
> (state statute allowing indefinite suspension or expulsion of disabled student during
> administrative proceedings violates EHA's stay-put provision allowing child to
> remain in current placement); *Converse County School District No. 2 v. Pratt*, 993
> F. Supp. 848, 860 (D. Wyo. 1997) (state rules and regulations prohibiting foster
> parents from acting as surrogate parents for IEP purposes violates IDEA's federal
> regulations); *Bray By Bray v. Hobart City School Corp., et al.*, 818 F. Supp. 1226,
> 1230 (N.D. Ind. 1993) (state procedure governing residential placement
> applications, which allowed state to review hearing officer's decision even if no
> appeal taken, violates IDEA); *Evans v. Evans*, 818 F. Supp. 1215 (N.D. Ind. 1993)
> (state procedures requiring additional application and review process resulting in
> delay in obtaining residential placement violates IDEA); *Amelia County School
> Board v. Virginia Board of Education*, 661 F. Supp. 889, 893-94 (E.D. Va. 1987)
> (state procedure for review of administrative proceedings that was substantially
> identical to procedure under EHA does not violate the Act); *Township High School
> District No. 211 v. Mrs. V.*, 1995 U.S. Dist. LEXIS 2601, at *6 (N.D. Ill.) (state
> statute providing two-tier state hearings does not offend IDEA); *see also Mrs. C. v.
> Wheaton*, 916 F.2d 69, 73 (2d Cir. 1990) (state standard of legal competency for
> purposes of waiving IDEA's procedural safeguards could not apply because it
> would be less exacting than federal provision).

*Sarah M. v. Weast*, 111 F. Supp. 2d 695, 703 (D. Md. 2000); *see also Parks v. Pavkovic*, 557 F.

Supp. 1280, 1287-88 (N.D. Ill. 1983), aff'd in part and rev'd in part on other grounds, 753 F.2d

1397 (7th Cir. 1985) (finding that a state statute regarding funding for special education and related services was "in conflict" with the federal IDEA and therefore "invalid under the supremacy clause").

### C. **The authority to find state laws preempted by the federal IDEA extends not only to courts but to state hearing officers as well.**

The Nebraska Department of Education's Rules of Practice and Procedure for Due Process Hearings in Special Education Contested Cases ("Rule 55") specifically require state hearing officers to determine the legal rights of parties pursuant to not only state law but also the IDEA. 92 Neb. Admin. Code § 55-001.02B.

In a case involving the alleged conflict between a state law and the rights granted under the IDEA, the U.S. District Court for the District of Maryland found the administrative law judge in the case had erred when she found "no preemption of the state statute by the federal" due to having found no conflict between the state and federal law provisions at issue. The federal district court found the state law was an obstacle to Congressional objectives for the IDEA and reversed the administrative law judge's decision:

> Under the Supremacy Clause of the Federal Constitution, "the relative importance to the State of its own law is not material when there is a conflict with a valid federal law, for any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Felder v. Casey*, 487 U.S. 131, 138, 101 L. Ed. 2d 123, 108 S. Ct. 2302 (1988) (citing *Free v. Bland*, 369 U.S. 663, 666, 8 L. Ed. 2d 180, 82 S. Ct. 1089 (1962)). The critical question is whether the state requirement "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 85 L. Ed. 581, 61 S. Ct. 399 (1941). As noted, the ALJ found that the state statute "works in concert with the federal statute and helps to achieve its aim," which she saw as giving the school system an opportunity to respond to concerns raised by the parents and to establish a time certain when a school plan is being rejected and when private placement is being pursued instead. The Court, however, takes a significantly different view. While "limitation to reimbursement absent prior notice" may be the purpose and objective of the particular state and federal statutes, the more appropriate inquiry, in the Court's view, is whether the Maryland statute stands as an obstacle to the "full" purposes and objectives of Congress. The Court believes that it does.

One of the express purposes of the IDEA is "to ensure that the rights of children with disabilities and their parents are protected." 20 U.S.C. § 1400(d)(2). *See also School Committee of Burlington*, 471 U.S. at 367. Among the rights insured under the IDEA is the right of parents to obtain reimbursement for private school placement for any period in which the placement proposed by the school authority has violated the IDEA. *Id*. In protection of this and other rights, "Congress incorporated an elaborate set of what it labeled 'procedural safeguards' to ensure full participation of the parents." *Id*. at 368.

*Sarah M. v. Weast*, 111 F. Supp. 2d 695, 701-02 (D. Md. 2000).

### D.  PLCS, as the local education agency for Student, must comply with the federal IDEA.

In support of its position Student is not entitled to IEP services during the 2024-2025 school year, PLCS asserted it "lacks the legal authority" to provide those services to her. (Exhibit 2, p. 1.) But there is nothing in the federal IDEA or in Nebraska state law that would prohibit PLCS from doing so.[3] In fact, the IDEA explicitly requires both states *and* local school districts to comply with its provisions.  PLCS, as the local education agency for Student, must therefore comply with IDEA requirements when it comes to providing FAPE to students who are eligible for special education services pursuant to the IDEA.

In its April 8, 2024, Prior Written Notice provided to Petitioners, PLCS stated

> [T]he District lacks the legal authority to serve [Student] after the school year in which she turns 21…. [Student] will turn 21 on ███████, 2024. The 2024-2025 school year for Papillion La Vista Community Schools does not begin until August 13, 2024. This means that she is not eligible for services during the 2024-2025 school year.

Exhibit 2, page 1

---

[3] The IDEA sets forth students' rights as well as requirements for state and local education agencies. A school district's assertion that a dispute over funding sources would relieve it of its responsibility to provide FAPE would constitute an issue that is not relevant to this dispute and that would not comport with the IDEA. *See* 92 Neb. Admin. Code § 51-011.02B1, which states that "[s]chool age budgets shall be limited to those children with disabilities from age five through the school year in which the child reaches age twenty-one and those children receiving support services as defined in 92 NAC 51-003.60."

This position is incorrect. It is true Nebraska receives federal IDEA funding and must therefore comply with the IDEA. But *School districts* in Nebraska must also comply with the IDEA:

> § 300.2 Applicability of this part to State and local agencies.
>
> (a) ***States.*** This part applies to each State that receives payments under Part B of the Act, as defined in § 300.4.
>
> (b) ***Public agencies within the State.*** The provisions of this part—
>
> (1) Apply to all political subdivisions of the State that are involved in the education of children with disabilities, including:
>
>> (i) The State educational agency (SEA).
>>
>> (ii) Local educational agencies (LEAs), educational service agencies (ESAs), and public charter schools that are not otherwise included as LEAs or ESAs and are not a school of an LEA or ESA.
>>
>> (iii) Other State agencies and schools (such as Departments of Mental Health and Welfare and State schools for children with deafness or children with blindness).
>>
>> (iv) State and local juvenile and adult correctional facilities; and
>
> (2) Are binding on each public agency in the State that provides special education and related services to children with disabilities, regardless of whether that agency is receiving funds under Part B of the Act.

34 C.F.R. § 300.2

The Eighth Circuit has clarified  both "[s]chool districts and state education departments may be held liable for failing to meet their obligation under IDEA." *Mo. Dep't of Elem. & Secondary Educ. v. Springfield R-12*, 358 F.3d 992, 999 (8th Cir. 2004).

Nebraska state statute likewise requires school districts to provide special education services to *all* students with disabilities as required by the IDEA:

Special education; school board; duties.

The school board of every school district shall provide or contract for special education programs and transportation for all resident children with disabilities who would benefit from such programs in accordance with the Special Education Act and all applicable requirements of the federal Individuals with Disabilities Education Act, 20 U.S.C. 1400 et seq., as such sections existed on January 1, 2019, and the regulations adopted thereunder.

Neb. Rev. Stat. § 79-1127

**II.      Is the Student eligible for services during the 2024-25 school year pursuant to 92 NAC § 51-004.01 which purports to terminate the entitlement to a FAPE under the IDEA for students with disabilities in Nebraska at the end of "the school year in which the child reaches age twenty-one"?**

Having found the Student is eligible to receive services until her 22nd  birthday, it is not necessary to answer this question. The definition of school year is no longer relevant in deciding the merits of the case.

**III.      Petitioner's Request for Relief**

**A. Petitioner's request for this Hearing Officer to determine attorney's fees are warranted is a decision for the appropriate court to decide.**

Pursuant to 20 U.S.C. § 1415(i)(3)(B)(i), the **court in its discretion,** may award reasonable attorneys' fees to a prevailing party.  Accordingly, the appropriate court must determine if petitioners meet the definition of prevailing party, and if so, whether attorneys' fees are appropriate.

**B. Student is entitled to compensatory education for PLCS's denial of her stay put right at the end of the 2023-2024 school year.**

Petitioners filed their due process petition on April 26, 2024, specifically invoking Student's right to stay put during the pendency of the proceedings. However, PLCS violated Student's right to stay put by refusing to provide her with special education services after May 9, 2024, which was designated as "Seniors Last Day" (*See* Exhibit 12) and the last date of services for graduating YATP students. (Fact Stip. 15.) However, because PLCS had set May 21, 2024 as the last day of school for the district overall for the 2023-2024 school year (Fact Stip. 16), Student should have been permitted to attend and receive special education services through May 21, 2024, given her right to stay put and the pending claim that she was not a graduating student but rather was entitled to an additional year of services.

Removing a student from services without the agreement of the student's parents violates the stay-put rule. *Sch. Dist. of Phila. v. Post*, 262 F.Supp.2d 178, 195 (E.D. Pa. 2017). When a school district violates the stay-put requirement, but it is too late to apply an injunction to remedy the violation, an award of compensatory education, over and above what is required by the then-current IEP, is appropriate. *See Student X v. New York City Dep't of Educ.*, No. 07-CV-2316, 2008 WL 4890440, at 23-25 (E.D.N.Y. Oct. 30, 2008).

The fact that in this case Student is now 21 does not preclude a court from providing equitable relief in the form of compensatory education. *Id*. at 24.  Here, Student has not yet aged out of IDEA eligibility, but even students who have aged out are still entitled to receive compensatory education services for denials of FAPE when they were eligible: "By definition compensatory relief must be in addition to any existing rights under the IDEA, either compensating above and beyond that which is provided in the current IEP or extending the services beyond the child's eligibility. Otherwise, it would simply be awarding services to which

the child is already entitled." *Doe v. East Lyme Bd. of Educ*., 262 F.Supp.3d 11, 33 (D. Conn. 2017).

## CONCLUSION

For the foregoing reasons, this Hearing Officer finds on the merits of Petitioners' claim. Student is entitled to special education services until her 22nd birthday which she is currently receiving pursuant to the written stay-put order issued on June 17, 2024. PLCS's termination of Student's special education services between May 10 and May 21, 2024 was a FAPE deprivation for which Student is entitled to compensatory education.

## IT IS THEREFORE ORDERED AS FOLLOWS:

a. Petitioners have met their burden of proof and have proven Student is entitled to special education services until her 22nd birthday and PLCS's termination of Student's special education services beginning on May 10, 2024, through May 21, 2024, constituted a FAPE denial. Student is eligible for special education services until her 22nd birthday pursuant to 20 U.S.C. § 1412(a)(1)(B), which preempts 92 Neb. Admin. Code § 51-004.01.

b. PLCS must provide compensatory education to student for the FAPE denial between May 10, 2024 and May 21, 2024, either in the form of allowing Student to attend beyond the last day of school for seniors (May 8, 2025) and through the last day of school for all PLCS students (May 23, 2025), *or* by providing her with eight days of appropriate programming in a manner and at a time agreed upon by Petitioners;

c. As required by 20 U.S.C. § 1415(*l*), Petitioners have exhausted their administrative remedies with respect to their claims under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

Dated this 30th day of May, 2025,


/s/ Mona L. Burton
By:     Mona L. Burton, #21696,
        Hearing Officer
        ANDERSON, CREAGER &
         WITTSTRUCK, P.C., L.L.O.
        1601 Old Cheney Road
        Lincoln, NE 68512
        (402) 477-8800


## CERTIFICATE OF SERVICE

I, Molly Burton, hereby certify that on the 30th day of May, 2025, a copy of the above and foregoing was served on the following via email and certified mail, return receipt requested,:

Nebraska Department of Education
Legal Services Office
P.O. Box 94987
Lincoln, NE  68509-4987
troy.hawk@nebraska.gov

Jordan Johnson, Esq.
KSB School Law
Cornhusker Plaza
301 S 13th St. Unit 210
Lincoln, NE 68508
jordan@ksbschoollaw.com

Amy Bonn
2805 Leigh Lane
Papillion, NE 68133
402-387-7293
amy@amybonnlaw.com